(21 Misc. Rep. 737.)

In re LIGHT.

(Supreme Court, Special Term, Albany County. November, 1897.)

1. BOARD OF EDUCATION—ADJOURNMENT OF MEETING.

Adjournment of a meeting of a board of education by two of its members, seven minutes after the appointed hour, because the others were not present, is within their legal power under the statutory construction law (Laws 1892, c. 677, § 19), providing that less than a quorum may adjourn such a meeting; and a custom to wait longer than seven minutes for a quorum will not make the adjournment irregular.

**2. SAME—REMOVAL FROM OFFICE—POWER OF STATE SUPERINTENDENT.**
Consolidated School Laws 1858, giving the state superintendent general supervision of all departments of instruction, apply to Dunkirk union free school district, created by Sp. Act 1858, c. 34, § 1; and title 1, § 13, and title 14, §§ 1, 2, of said Consolidated School Laws, which give the superintendent power to remove school officers on appeal for neglect of duty, etc., and to regulate the practice on appeal, confer jurisdiction upon him to remove members of the board of education of said Dunkirk school district for neglect of duty, notwithstanding a provision in the act creating said district giving the school board thereof entire management of all common schools therein.

**3. CERTIORARI—DECISION OF STATE SCHOOL SUPERINTENDENT.**
The decision of a state superintendent on an appeal taken for the removal of members of a school board for willful neglect of duty, being final and conclusive under Consolidated School Laws 1894, c. 556, tit. 14, § 1, subd. 7, cannot be reviewed on certiorari.

**4. SCHOOL BOARD—DECISIONS—APPEAL.**
Where members of a school board proceeded with a board meeting after they knew it had been regularly adjourned, their acts are such "official acts" as may be considered by the state superintendent, on appeal brought for the purpose of removing the members from office, under Consolidated School Laws, tit. 14, § 1, providing that any one aggrieved by decisions of school authorities, "or by any other official act," may appeal to the state superintendent.

Application of Frederick D. Light and others for writ of certiorari. Application denied.

Charles Daniels, for applicants.
Stearns & Warner, opposed.

CHESTER, J.    The petitioners, five in number, ask for the allowance of a writ of certiorari for the purpose of reviewing the legality of an order made by the state superintendent of public instruction removing them from office as members of the board of education of the Dunkirk union free school district in Chautauqua county.

The district in question is not limited by the boundaries of the city of Dunkirk, but takes in the entire town of Dunkirk, which comprises a considerable area of territory outside of the city limits.    It appears that this board of education is composed of eight members, and that a regular meeting of the board was adjourned to meet at its office in the academy building in Dunkirk, on the 19th day of June, 1897, at 7:30 p. m.    At that time and place Dr. Williams, the president of the board, together with Mr. Mulhall, another member of the board, met, and, after waiting until 7:37 o'clock, and no other member appearing, the two members present voted to adjourn the meeting without day, and without transacting any other business.    Dr. Williams and Mr. Mulhall then left the office of the board, and the building in which the office is located.    Upon going out, they saw the other members of the board either standing outside or coming into the building, and informed them that the meeting had been adjourned without day.    The five members of the board who are the petitioners here thereupon entered the office of the board and proceeded to hold what they termed a regularly adjourned meeting of the board.    At that meeting, as appears by the record thereof kept by Mr. Light, one of the members, and secretary of the board, the president being absent, Mr. Parker, another

member, was made chairman pro tempore. The minutes of the prior meeting were read and approved, and a motion was adopted, by the votes of ·all members present, that Clarence F. Norton be appointed superintendent of the Dunkirk Union School for one year, beginning with the next school year, and he was declared duly elected such superintendent. A motion was also adopted authorizing the president and secretary to draw warrants in payment of teachers' and janitors' salaries for the month of June when the same were due. The resignation of the principal of the junior grammar department was received and accepted, and another teacher promoted or elected to the position made vacant by the resignation.

It is urged that the adjournment of the meeting by the two members was irregular, because it had been customary at prior meetings to wait much longer than seven minutes for the arrival of absent members. I think, however, that it was the duty of the members to give their prompt attendance upon a board meeting at the appointed hour, and the statutory construction law provides that a meeting of a board, such as this is, may be adjourned by a less number than a quorum. Laws 1892, c. 677, § 19. The special act creating this board provides that:

"Special meetings may be called by the president, or in his absence or inability to act, by the secretary or any other member of the board, as often as is necessary, by giving personal notice to each member of the board, or causing a written or printed notice to be left at his place of residence, at least twenty-four hours before the hour of said meeting." Laws 1858, c. 34, § 7.

There is no pretense here that the meeting held by these five members was called pursuant to this provision relating to special meetings.

Following this meeting an appeal was taken to the state superintendent by Dr. Williams, president of the board, or an application made by him by petition under oath setting forth the facts, and asking for the removal of the five members who participated in the meeting from their offices as members of the board of education of the town of Dunkirk. The five members were notified of the petition for their removal, and were directed to transmit their answer to the department of public instruction. Their verified answer was afterwards so submitted, and upon the facts presented by such petition and answer the superintendent made a decision that the five members had been guilty of willful violation of duty, and made an order in accordance with the prayer of the petition removing them from office. If the superintendent had jurisdiction and power under the law to make the order in question, the writ here asked for cannot be allowed, for the reason that the law makes his decision final and conclusive, and not subject to question or review in any court. or place whatever. (Consolidated School Law), Laws 1894, c. 556, tit. 14, § 1, subd. 7.

It is asserted by the petitioners that, as the board of education of Dunkirk was created under a special law, giving it "entire control and management of all the common schools within the said district and all the property belonging to the same," and not under the general school law, the state superintendent has no jurisdiction or power to remove a member of the board. · I cannot adopt this view. The system of education in this state is a state system, and not a local system, and ·

it is one over which the state has a general supervision. It is supported by a liberal amount of taxes, levied annually by the state, which are supplemented by such amounts of local taxes as may meet the requirements of the several cities and districts in the state. It is true that this system is administered sometimes by one set of agencies and sometimes by another, so far as different localities are concerned; but in all cases it is the school system and policy of the state, and not of any particular locality. Ham v. Mayor, etc., 70 N. Y. 459. Where the schools in a locality are governed by a special act, that act should be considered and construed with reference to the general school law of the state, with a view, if possible, of sustaining both the general and the local law, and the harmony of both.

The special act under which the board of education in question was established expressly creates the district over which that board has jurisdiction into a union free school district, to be known as the "Dunkirk Union Free School District." Laws 1858, c. 34, § 1. The consolidated school law, in the title thereof relating to union free school districts, provides that:

"Every union free school district, in all its departments, shall be subject to the visitation of the superintendent of public instruction. He is charged with the general supervision of its board of education and their management and conduct of all its departments of instruction, * * * and shall also whenever thereto required by the superintendent of public instruction, report fully to him upon any particular matter." Laws 1894, c. 556, tit. 8, art. 4, § 28.

The same title provides that:

"For cause shown, and after giving notice of the charge and opportunity of defense, the superintendent of public instruction may remove any member of a board of education. * * * Willful violation or neglect of duty is cause for removal." Laws 1894, c. 556, tit. 8, art. 4, § 29.

I cannot believe it was the intention of the legislature to have these provisions apply simply to union free school districts and boards of education organized under the general law. The language is broad enough in each section to cover boards and districts created by special acts. Other provisions of the same law furnish the authority for the apportionment by the superintendent of public instruction of the moneys annually raised by the general state tax for common schools (Laws 1894, c. 556, tit. 2, art. 1), and under which the Dunkirk union free school district receives its share. It seems to me clear, therefore, that the general law applies, and was intended to apply, to this district, notwithstanding it was organized under a special act.

The consolidated school law, in defining the powers and duties of the state superintendent, also provides (section 13, tit. 1) that:

"Whenever it shall be proved to his satisfaction that any school commissioner or other school officer has been guilty of any willful violation or neglect of duty under this act, or any other act pertaining to common schools * * * the superintendent may by an order under his hand and seal * * * remove such school commissioner or other school officer from his office."

This law further provides, in title 14, § 1, that any person conceiving himself aggrieved in consequence of any decision made by certain school authorities named in the act, or "by any other official act or decision concerning any other matter under this act, or any other act pertaining to common schools, may appeal to the superintendent of

public instruction, who is hereby authorized and required to examine and decide the same." The next section of the law provides that the superintendent, in reference to such appeals, "shall have power to regulate the practice therein　*　*　*　and to make all orders　*　*　* which may, in his judgment, be proper or necessary to give effect to his decision." ·

I think the statutes above quoted are ample to give the superintendent jurisdiction to entertain and decide the appeal taken to him, notwithstanding the provisions in the special act giving the local board of education "entire control and management of all the common schools within the said district." The power that has been exercised by the superintendent is rather over the board of education, or the members thereof, than over the schools; but, if this is not so, I think the control and management which the special act gives to the local board is subject to such power and authority as is given by the general law to the superintendent as the head of the state school system. It had been the law of the state long before the enactment of the special act creating the Dunkirk board of education that any aggrieved person had the right to take an appeal to the superintendent concerning any matter arising under the act relating to common schools, and his decision thereon was final. This principle was first inserted in the law by an amendment passed in 1830 to the Revised Statutes (chapter 320, § 7, Laws 1830); and this was the law at the time of the enactment of the special act in question (2 Rev. St. [5th Ed.] p. 124, § 178). I am unable to find anything in the special act taking away or restricting any of the powers of the state superintendent with reference to appeals or grievances theretofore existing. In the absence of a clear expression of such intent in the local law, the courts should not, in my opinion, seek to cut down the power and jurisdiction of the superintendent with reference to a system which I believe it is the purpose and policy of the law to be state wide and harmonious. The local act contains no provision authorizing the removal of any member of the board for any cause, except that the board may declare the office vacant on the refusal or neglect of a member to attend three successive stated meetings of the board; and I think the power of removal for any other cause has wisely been left with the state superintendent.

It is also urged that the acts with reference to which the appeal has been taken were not "official acts or decisions," within the meaning of those terms as used in the statute; that they were the acts of a void meeting, or the acts of the five members of the board as individuals and not as officials; that acts done as individuals could not constitute a violation of official duty, and for these reasons the superintendent had no power or jurisdiction to entertain or decide the appeal. In support of this, a statement is referred to, made by the superintendent in his decision, that the meeting on June 19, 1897, at which the five members were present, was neither an adjourned meeting or a special meeting; that it "was not a legal meeting of the board of education of Dunkirk, but simply a meeting of the five persons who were present as individuals." It is often said that the reason for a decision may be bad, and the decision good. This may or may not be true of the statement referred to in the superintendent's decision, and yet not affect the

validity of his final conclusion. It appears that the meeting of the board adjourned to be held on the 19th day of June, 1897, was lawfully adjourned without day by a minority of the board; that that fact was made known to five of the members, who were not present at the adjournment, and that, notwithstanding this knowledge on their part, they immediately proceeded to the rooms of the board, and organized a meeting by the appointment of one of their number as president pro tempore; that the secretary, who was present, kept a record of the meeting, and entered the minutes in the official minute or record book of the board; that they passed a resolution to appoint a superintendent of schools for the ensuing school year; and that they assumed to transact other business in relation to the schools. These acts had the color of regularity and the badge of official authority. They were acts which these members of the board assumed to perform in their official capacity. Official acts are of necessity also individual acts, and they are none the less official acts because they are or may prove to be void or unlawful acts. It is true the superintendent held the meeting at which these proceedings were had to be a void meeting; but, if the appeal had not been taken, the question of its regularity would not have been raised, and the proceedings would have stood as the official acts of the board. These proceedings and these acts required to be challenged in some proper tribunal having jurisdiction and authority in the matter before their invalidity could be determined. Upon being so challenged, the superintendent not only declared them void, but held that it had been proven to his satisfaction, upon the facts presented, that the members participating in them had been guilty of a willful violation of duty, and made the order removing them from office. It has been held in this department that the word "willful," as used in the school law, means "intentional." People v. Draper, 63 Hun, 389, 18 N. Y. Supp. 282. That the members who participated in this meeting did so with full knowledge on their part that the meeting appointed for that night had been adjourned is made entirely clear by the papers. The superintendent undoubtedly believed that it was their duty to have refrained from these proceedings after they had been informed of the adjournment, and that they willfully violated that duty.

For the reasons I have given, I think the superintendent had jurisdiction to make the order in question. If he had jurisdiction, it matters not whether his conclusion upon the evidence submitted to him was wrong or right, or that he came to a different conclusion than the court would have arrived at upon the same facts, for the reason that he was by law made the tribunal for the determination of the controversy, and his decision is final and conclusive. The application is, therefore, denied, with costs.

Application denied, with costs.